COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Humphreys, O'Brien and Chaney
Argued by videoconference


DEPARTMENT OF STATE POLICE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0661-22-3              JUDGE MARY GRACE O'BRIEN
                                                            JULY 25, 2023

TODD BRENDEL


FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Jack S. Hurley, Jr., Judge

Steven R. Minor (Elliott Lawson & Minor, on brief), for appellant.

Timothy W. McAfee (Kristen N. McAfee; McAfee Law Firm, PLLC,
 on brief), for appellee.


The Department of State Police (DSP) appeals a circuit court ruling granting a request to

enforce certain conditions of a hearing officer's order.  The order, which was upheld by the Office

of Employment Dispute Resolution, reinstated Todd Brendel's employment and awarded him back

benefits.  DSP contends the court erred by requiring it to reimburse Brendel for substitute health

insurance premiums he paid after he learned that DSP was legally obligated to reinstate his benefits.

DSP also argues the court erred by requiring DSP to pay half of the employee's share of the

premiums for retroactively reinstated health insurance benefits.  DSP's final three assignments of

error challenge the court's decision granting Brendel's request to purchase his service weapon.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## BACKGROUND[1]

In January 2018, Brendel, employed as a DSP state trooper, injured both shoulders on the job. He underwent surgery in October 2019, and the Workers' Compensation Commission awarded him temporary total disability benefits.

When Brendel returned to work in February 2020, he continued to have problems with his left shoulder and could not hold a firearm properly. Brendel requested a fitness-for-duty assessment, and a doctor determined that he was not fit to return to duty. As a result, DSP terminated his employment effective May 13, 2020.

Brendel filed a grievance over his termination. A hearing officer reinstated Brendel's employment, finding that DSP wrongfully denied Brendel access to short-term disability benefits by terminating his employment. The Office of Employment Dispute Resolution (EDR) affirmed the hearing officer's decision. DSP was ordered to reinstate Brendel to his former position, "so that he can exercise the options available to him under the [disability policy]" and to "provide back benefits including health insurance and credit for leave and seniority that [Brendel] did not otherwise accrue." DSP did not seek judicial review of EDR's decision.

Brendel emailed DSP on April 16, 2021, specifying his claims under the reinstatement decision. Among other things, Brendel requested reimbursement for $11,300.92 in substitute health insurance premiums he paid through April 2021. Brendel also claimed he had a right to purchase his service weapon.

In an April 20, 2021 letter, DSP officially notified Brendel of his reinstatement "effective May 13, 2020," instructed him on applying for disability benefits, and advised that his "health insurance will be reinstated retroactive to June 1, 2020."

---

[1] The record contains a certified statement of facts in lieu of a transcript.

Later, Brendel transitioned to long-term disability retroactive to December 1, 2020, and DSP agreed to reimburse him for the $11,300.92 he paid in substitute insurance premiums. However, DSP also advised that because Brendel's health insurance was reinstated retroactively to June 1, 2020, DSP had paid $2,052 for Brendel's "employee[] share" of the premiums, which "would have ordinarily been deducted from Brendel's paychecks." Accordingly, DSP offset its reimbursement to Brendel for that amount. DSP also determined that Brendel's request to purchase his service weapon was "outside the scope of the hearing officer's decision." DSP further stated that it considered his request under Code § 59.1-148.3 and denied it based on "multiple pending allegations of misconduct that occurred *prior* to the fitness for duty evaluation," as well as Brendel's "extreme difficulty in utilizing firearms."

Brendel moved to enforce the hearing officer's decision in circuit court. He claimed he was entitled to reimbursement for premiums beyond the $11,300.92 because he refused to cancel his substitute health insurance plan until he received his insurance card from the state's insurer in August 2021. The additional premiums he paid after April 2021—after receiving DSP's official reinstatement notice—totaled $3,738.42.[2] DSP responded that it had no duty to reimburse Brendel for premiums he paid for substitute health insurance after his reinstatement. The court disagreed with DSP and awarded the added reimbursement.

Brendel also disputed DSP's attempt to offset his insurance reimbursement award by $2,052, based on DSP paying his share of health insurance premiums from June to December 2020. Brendel proffered a letter he received from the state's health insurance carrier on February 17, 2022,

---

[2] Although the statement of facts notes that Brendel paid $4,764.42 in additional premiums after April 2021, the court's final order states that Brendel paid "$15,039.35 for premiums paid through August 2021" and "$11,300.93 for premiums paid through April 2021," making the additional amount he paid $3,738.42. However, the court awarded Brendel $4,764.42, which comprised the $3,738.42 Brendel paid in additional premiums after April 2021 "plus $1,026.00[,] representing half of the employee's share of the [state insurance] premium for the period June 1, 2020 through December 1, 2020."

indicating that he did not have coverage during five of the months that DSP claimed to have made the payments. Brendel proffered that the letter stated, "Our records indicate your coverage was effective 2/1/2020 – 6/1/2020 and then again 11/1/2020 – 1/31/2022." The letter is not part of the record.

In response, DSP proffered the testimony of a Department of Human Resources Management (DHRM) employee that Brendel's coverage was reinstated from June to December 2020 and that Brendel's share of the premium costs was $342 per month for those six months. DSP also produced two 2021 emails from DHRM informing DSP that Brendel's health insurance was retroactively reinstated to June 1, 2020, and as a result, DHRM required DSP to pay Brendel's "employee share" for the reinstated policy. However, DSP's proffer acknowledged that "it was not possible to single out a single employee from the gross payment made to the health insurance carrier" because it paid a lump sum for all employees. Based on these proffers, the court "split the difference" and awarded Brendel $1,026—half of the disputed amount.

Finally, Brendel challenged DSP's denial of his request to buy his service weapon, arguing that the opportunity to purchase the weapon was "part of the terms and conditions of his employment." Brendel also contended that, even if DSP had discretion to deny his request to purchase the weapon, it abused that discretion by denying the purchase based on allegations of misconduct and Brendel's physical inability to use it. The court agreed, holding that DSP was required by statute to sell Brendel the weapon, or in the alternative, that its refusal to sell for the stated reasons constituted an abuse of discretion.

This appeal followed.

ANALYSIS

A. Standard of Review

Under Code § 2.2-3006(D), "[e]ither party may petition the circuit court . . . for an order requiring implementation of the final decision of a hearing officer." An action to enforce a grievance award, however, is "not an appeal of the grievance panel decision." *Va. Dep't of Corr. v. Estep*, 55 Va. App. 386, 391 (2009); *see also Va. Dep't of Tax'n v. Daughtry*, 19 Va. App. 135, 137 (1994) (holding that a motion to enforce a grievance award is akin to a "proceeding to domesticate and enforce a foreign judgment" and therefore is "not an appeal of the grievance panel's decision"). In an enforcement action, the circuit court's task is a narrow one—it simply reviews whether the final decision of a hearing officer has been implemented. The court does not review the hearing officer's decision on the merits nor consider a modification of the decision.

Similarly on appeal, we do not review "the factual basis nor the legal correctness of the hearing officer's decision." *Va. Dep't. of Corr. v. Estep*, 281 Va. 660, 664 (2011). "Our consideration is confined to the circuit court's decision implementing the hearing officer's order." *Id.* "[W]e defer to the trial court's findings of fact if the record contains evidence to support them[,] but we review conclusions of law de novo." *Id.*

On appeal, we also review issues of statutory construction de novo. *Ruderman v. Pritchard*, 76 Va. App. 295, 302 (2022); *Collelo v. Geographic Servs., Inc.*, 283 Va. 56, 66 (2012).

B. Assignment of Error 1:
Substitute Health Insurance Premiums Following Notice of Reinstatement

DSP argues the court erred by ordering it to reimburse Brendel for substitute health insurance premiums he paid after he was notified of his reinstatement on April 20, 2021. DSP contends that it was not responsible for Brendel's "choice to continue paying premiums after he was informed in April 2021 that [DSP] was legally obligated to reinstate his benefits."

The grievance award ordered DSP to "reinstate [Brendel] to [his] same position prior to removal" and "provide back benefits including health insurance and credit for leave and seniority that the employee did not otherwise accrue." DSP's April 2021 letter advised Brendel that his "health insurance will be reinstated retroactive to June 1, 2020" and that he "will be reenrolled" in his former plan. According to DSP the court erroneously awarded Brendel compensatory damages by ordering it to reimburse Brendel for payments he made on his substitute insurance premiums after April 2021, which is outside the scope of the grievance award.

Brendel responds that the grievance award's requirement that DSP "provide back benefits including health insurance" encompassed DSP's legal obligation to reimburse Brendel for the substitute insurance he maintained until he received definitive proof of reinstatement under the state policy. According to Brendel, he had a right to wait until he received an insurance card before terminating his premium payments on his substitute policy. He contends that the court found "his reliance on the lack of proof of insurance was reasonable, and his efforts to maintain health insurance coverage was appropriate."

However, the primary question before the court is whether DSP complied with the grievance award and reinstated Brendel's insurance coverage effective June 1, 2020. We note that the court failed to make a factual finding as to whether Brendel had actually been re-enrolled in a health insurance plan retroactive to June 1, 2020 (and, accordingly, whether DSP had actually complied with the grievance award,) and that the evidence was in conflict on this issue. DSP relies on emails between a DSP senior human resource manager and DHRM senior health benefits specialist to show that it retroactively reinstated Brendel's health insurance coverage to June 2020. In an email on April 22, 2021, the DHRM specialist informed DSP human resources that he "add[ed] James Brendel and Family back to coverage effective 6/1/20." Brendel, however, relies on his proffer of

- 6 -

the February 17, 2022 letter from the state insurance carrier indicating that he did not have on-going coverage retroactive to June 1, 2020.

The circuit court's role in a case brought under Code § 2.2-3006(D) is very narrow—it is limited to enforcement and implementation. To that end, the court must determine whether a party has implemented the decision of a hearing officer, and, if not, to order that it be done. Because "[o]ur consideration is confined to the circuit court's decision implementing the hearing officer's order," *Estep*, 281 Va. at 664, and the court failed to decide this issue, we reverse and remand for the court to determine whether DSP reinstated Brendel's insurance retroactive to June 2020.

### C. Assignment of Error 2:
#### Employee's Share of State Health Insurance Premiums from June to December 2020

DSP next argues that the court erred by requiring it to pay half of the employee's share of the state health insurance premium for the period of June 1, 2020 through December 1, 2020.[3] DSP contends the record showed that "the undisputed evidence showed that the amount of the employee share of the premium was $2,052."

When confronted with DSP's insistence that it both reinstated and paid for Brendel's health insurance coverage retroactively, along with Brendel's insistence that it was reasonable to continue paying for substitute health insurance, the court decided to "split the difference" and require Brendel to reimburse DSP for only half of what DSP claimed was the "employee's share" of the premiums. This split reflects the court's attempt to equitably resolve a factual dispute and fashion an appropriate remedy to enforce the hearing officer's decision.

A circuit court, however, "lacks authority . . . to invoke its broad equitable powers" when implementing a grievance decision. *See LaRock v. City of Norfolk*, 301 Va. 100, 105 (2022) (quoting *Va. Dep't of Env't Quality v. Wright*, 256 Va. 236, 241 (1998)). *LaRock* construed a

---

[3] December 1, 2020 is the cutoff date because Brendel transitioned to retiree/long-term disability coverage at that time.

statute providing for enforcement of a grievance panel's decision related to the termination of a city employee. *Id.* at 102-05; *see also* Code § 15.2-1507(A)(11) (stating that after the grievance panel reaches its decision, either party may petition a circuit court "for an order requiring implementation of the hearing decision"). In *LaRock*, the Supreme Court noted that a circuit court's review "is limited to the act of implementing, or refusing to implement, the hearing officer's ruling," and the court "lacks authority . . . to invoke its broad equitable powers to arrive at a decision that the court may think is fair." *Id.* at 105 (quoting *Wright*, 256 Va. at 241). Therefore, under *LaRock*, the court here did not have the authority to equitably "split the difference," even if it sought to arrive at a decision it thought was fair. *Id.*

As an appellate court, we cannot resolve the conflict in the evidence as to whether DSP actually paid Brendel's "employee share" of health insurance premiums from June 1, 2020 through December 1, 2020. The record contains a series of internal emails and a proffer of testimony from a DHRM employee that Brendel's share "would have" been $342 per month. However, DSP's proffer also acknowledged that "it was not possible to single out a single employee from the gross payment made to the health insurance carrier" because it paid a lump sum for all employees, and Brendel proffered the February 2022 letter he received from the state health insurer indicating he did not have coverage for part of this period.

Accordingly, we reverse the court's decision and remand the matter for factual findings on the issue of employee premium off-set to the reimbursement award.

### D. Assignments of Error 3, 4, and 5:
### Brendel's Request to Purchase Service Weapon

DSP assigns three errors to the court's determination that Brendel was entitled to purchase his service weapon. DSP first contends that the court erred by finding that the sale of a service weapon under Code § 59.1-148.3 was a "benefit" that was "required by the grievance award to be reinstated." In the alternative, DSP argues that if the sale of a service weapon was a "benefit"

encompassed by the award, the court erred by determining that Code § 59.1-148.3 did not confer discretion on DSP to refuse the purchase request and concluding that even if it did, DSP had abused its discretion by refusing the request. We turn first to the question of whether the sale of a service weapon under Code § 59.1-148.3 was a "benefit" within the scope of the grievance award.

The grievance award ordered DSP to "provide back benefits including health insurance and credit for leave and seniority that the employee did not otherwise accrue." Brendel attempted to purchase his service weapon pursuant to Code § 59.1-148.3, which states that "[t]he Department of State Police . . . may allow any sworn law-enforcement officer . . . who retires . . . or who is receiving long-term disability payments . . . to purchase the service handgun issued to him by the agency . . . ."

Initially, we note that the hearing officer's award returned Brendel to the position he held before he was terminated—a point when he would not have begun to apply for long-term disability or retirement. Under Code § 59.1-148.3, a law enforcement officer may only request to purchase their service weapon upon leaving service with no expectation of returning.[4] As EDR ruled in its letter opinion affirming the hearing officer's decision, "the hearing officer did not order that the agency provide disability benefits as a form of relief . . . [and] ha[d] not directed disability benefits to be paid to [Brendel]." The hearing officer's award did not address anything that Brendel might be entitled to after he applied for long-term disability or retired; it merely "reinstate[d] . . . [Brendel] to the same position [he occupied] prior to removal" so he could "exercise the options available to him under [the disability policy]." Thus, we find that the purchase of the service weapon was not a "benefit" encompassed by the grievance award and therefore is not the proper subject of a motion to enforce under Code § 2.2-3006(D). Accordingly, we do not consider whether Code § 59.1-148.3 is

---

[4] Although leaving service does not appear to be a requirement to purchase a service weapon under subsections (G) and (H), nothing in the record indicates that either subsection applies to Brendel, or that he relied on either when he made his request.

discretionary and whether DSP abused its discretion in denying Brendel's request, and we reverse the court's ruling concerning Brendel's purchase of his service weapon.

CONCLUSION

For the foregoing reasons, we reverse and remand for factual findings on whether DSP reinstated Brendel's insurance retroactive to June 2020 and the issue of employee premium off-set to the reimbursement award, and we reverse the circuit court's ruling concerning Brendel's purchase of his service weapon.

*Reversed and remanded.*